ACCEPTED
12-14-00254-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
3/6/2015 4:18:27 PM
CATHY LUSK
CLERK

NO. 12-14-00254-CV
TO THE COURT OF APPEALS FOR
THE TWELFTH DISTRICT OF TEXAS
AT TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

3/6/2015 4:18:27 PM

CATHY S. LUSK
Clerk

_____

NEURODIAGNOSTIC TEX, L.L.C.
Appellants,


v.


ROBERT "JOSH" PIERCE and SYNERGY IOM, L.L.C.
Appellees.
_____


**APPELLEE ROBERT "JOSH" PIERCE'S OPENING BRIEF**


_____


Appeal from the 7th District Court, Smith County, Texas,
Honorable Kerry L. Russell, Presiding
_____


HAMPTON & ASSOCIATES, P.C.
1000 Houston Street, 4th Floor
Fort Worth, Texas 76102
Phone: (817) 877-4202
Fax: (817) 877-4204

CARTER L. HAMPTON
Texas State Bar No. 08872100
clhampton@hamptonlawonline.com

**ATTORNEY FOR APPELLEE
ROBERT "JOSH" PIERCE**

## IDENTITY OF COUNSEL AND PARTIES

Appellant has accurately set forth the identity of the parties and counsel.

# TABLE OF CONTENTS

IDENTITY OF COUNSEL AND PARTIES ................................................................................ ii

TABLE OF CONTENTS ....................................................................................................... iii

INDEX OF AUTHORITIES .................................................................................................. vi

STATEMENT REGARDING ORAL ARGUMENT ..................................................................... 1

I.   STATEMENT OF FACTS ............................................................................................. 2

II.  SUMMARY OF ARGUMENT ....................................................................................... 5

III. ARGUMENT & AUTHORITIES ................................................................................... 6

    A.  APPELLANT HAD ADEQUATE TIME FOR DISCOVERY (APPELLANT'S ISSUE #1) .................... 6

        1.  Appellant Cannot NOW Complain of Scheduling Order ............................................. 6

        2.  Different Issues Raised On Appeal ......................................................................... 7

        3.  Appellant's Motion and Brief Are Insufficient ........................................................ 8

        4.  No Abuse of Discretion in Denying Appellant's Continuance ..................................... 8

    B.  ADEQUATE NOTICE OF SUMMARY JUDGMENT GROUNDS (APPELLANT'S ISSUE #2A-B) ...... 12

        1.  Appellant's Special Exceptions are Insufficient ..................................................... 13

        2.  Alleged Failure to Delineate Between Grounds ...................................................... 13

            (a).   Pierce's Motion Sufficient ........................................................................ 13

            (b).   Incorporation of Synergy's Motion for Summary Judgment ............................ 14

            (c).   Pierce's Identified Elements for Which There Was No Evidence ...................... 15

    C.  ADMISSION OF SUMMARY JUDGMENT EVIDENCE (APPELLANT ISSUE #3) ....................... 16

        1.  Exhibit 7 – Email Between Counsel ....................................................................... 16

        2.  Exhibit 8 – Temporary Injunction Hearing Transcript .............................................. 17

3.  Exhibit 10 – Plaintiff's Customer List ........................................................18

D. INCORPORATION OF SYNERGY'S MOTION FOR SUMMARY JUDGMENT ...............................20

E. COVENANT UNENFORCEABLE BECAUSE IT IS NOT ANCILLARY TO AN OTHERWISE ENFORCEABLE AGREEMENT (APPELLANT'S ISSUE #4B) ....................................................22

1.  Training Does Not Support Covenant.........................................................23

    (a).    No Evidence that Training or Advancement of Funds for Training Was Worthy of Protection.................................................................23

    (b).    Training and Advancement of Funds for Training Was NOT An Interest Worthy of Protection....................................................25

2.  Covenant Not Designed to Enforce Pierce's Return Promise Regarding Training .....28

    (a).    No Evidence Covenant Was Designed to Enforce Pierce's Promise Regarding Training ................................................................28

    (b).    Covenant NOT Designed to Enforce Pierce's Promise Regarding Training...29

3.  Appellant's Customer Information Not an Interest Worthy of Protection ..................30

    (a).    No Evidence that Customer Information Was Worthy of Protection or Reasonably Related to One........................................................30

    (b).    Customer Identities NOT Worthy of Protection.............................................34

    (c).    Surgeon Identities/Preferences NOT Worthy of Protection ...........................36

    (d).    Appellants' Pricing NOT an Interest Worthy of Protection ...........................37

    (e).    Appellant Not Relieved From Establishing Ancillary Requirements..............39

F. COVENANT'S RESTRAINTS ARE UNREASONABLE (APPELLANT'S ISSUE #4C) ....................40

1.  No Evidence that 5 Year Covenant Was Reasonable .................................................41

    (a).    Advancement of Funds Does NOT Make 5 Years Reasonable.......................42

    (b).    Long Employment Does NOT Equal Long Covenant....................................43

2.  Geographic Restraints Were Unreasonable .............................................................44

3.  Scope of Activities from Which Pierce is Prohibited is Unreasonable .......................47

4.  Pierce Did Not Breach Covenant ...............................................................49

G. APPELLANT FAILED TO PROVE DAMAGES (APPELLANT'S ISSUE #4D) ...............................50

1.  Damages Foreclosed by Statute ...............................................................50

2.  No Evidence of Damages...........................................................................51

H. TRIAL COURT NOT REQUIRED TO REFORM COVENANT (APPELLANT ISSUE #4E) ...............53

I.  NO EVIDENCE OF FIDUCIARY BREACH (APPELLANT ISSUE #5) ...........................................56

PRAYER  ...................................................................................................................58

CERTIFICATE OF COMPLIANCE...........................................................................................59

CERTIFICATE OF SERVICE ..................................................................................................59

# INDEX OF AUTHORITIES

**Cases**

*Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.,* 260 S.W.3d
  529, 534, 536, 540 (Tex. App.—Tyler 2008, pet. denied) ................................ 39, 40, 50, 56

*Aldous v. Bruss*, 405 S.W.3d 847, 857 (Tex. App.—Houston [14th Dist.] 2013, no pet.)...... 13

*Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 649 (Tex. 2006).. 23, 24, 27

*Allan J. Richardson & Assocs., Inc. v. Andrews*, 718 S.W.2d 833, 837
  (Tex. App.—Houston [14th Dist.] 1986, no writ) ............................................................ 32

*Am. Fracmaster, Ltd. v. Richardson*, 71 S.W.3d 381 (Tex. App.—Tyler 2001, pet. granted,
  judgment vacated w.r.m.)................................................................................................ 41

*Am. Precision Vibrator Co. v. Nat'l Air Vibrator Co.*, 764 S.W.2d 274, 276 (Tex. App.—
  Houston [1st Dist.] 1988) *as modified,* 771 S.W.2d 562 (Tex. App.—Houston
  [1st Dist.] 1989, no writ) ................................................................................................ 32

*Arabesque Studios, Inc. v. Academy of Fine Arts Int'l*, 529 S.W.2d 564
  (Tex. App.—Dallas 1975, no writ) ............................................................................ 11, 12

*Atlas Copco Tools v. Air Power Tool & Hoist*, 131 S.W.3d 203, 209
  (Tex. App.—Fort Worth 2004, pet. denied) .................................................................... 52

*Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007)........................................... 13

*Blake v. Lewis*, 886 S.W.2d 404, 409 (Tex. App.—Houston [1st Dist.] 1994, no writ) .......... 8

*Brown v. Brown*, 145 S.W.3d 745, 750 (Tex. App.—Dallas 2004, pet. denied).................... 19

*Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 792 (Tex. App.—Houston
  [1st Dist.] 2001, no pet.) .......................................................................... 45, 46, 50, 51

*Carter v. MacFadyen*, 93 S.W.3d 307, 311 (Tex. App.—Houston [14th Dist.] 2002, pet.
  denied).............................................................................................................................. 6

*Castano v. San Felipe Ag., Mfg., & Irrigation Co.*, 147 S.W.3d 444, 453 (Tex. App.—San
  Antonio 2004, no pet.) ................................................................................................... 13

*Cobb v. Caye Publ. Grp., Inc.,* 322 S.W.3d 780, 784-86 (Tex. App.—Fort Worth
  2010, no pet.) ...................................................................................................... 45, 46, 51

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)
*reh'g denied* (Feb. 14, 2014) ........................................................................ 50

*Courtney v. Nibco, Inc.,* 152 S.W.3d 640, 644 (Tex. App.—Tyler 2004, no pet.) ................. 31

*Custom Drapery Co. v. Hardwick*, 531 S.W.2d 160, 165 (Tex. Civ. App.—Houston
[1st Dist.] 1975, no writ) ........................................................................ 25

*Dale v. Hoschar*, 2014 Tex. App. LEXIS 8816, *4, *7 (Tex. App.—Dallas 2014, no pet.) .. 44

*Daytona Grp. of Tex., Inc. v. Smith*, 800 S.W.2d 285, 290
(Tex. App.—Corpus Christi 1990, writ denied) .............................................. 24, 26, 53, 54

*DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681-82 (Tex. 1990) ........................ 41, 49, 54

*Emergicare Sys. Corp. v. Bourdon,* 942 S.W.2d 201, 204
(Tex. App.—Eastland 1997, no pet) .............................................................. 53

*Evan's World Travel, Inc. v. Adams*, 978 S.W.2d 225, 232-33
(Tex. App.—Texarkana 1998, no pet.) .......................................... 22, 24, 45, 46, 50, 51

*Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 612 (Tex. 1996) ....................... 20

*Flory v. Daimler Chrysler Corp.*, 2003 Tex. App. LEXIS 10235, 2
(Tex. App.—Tyler 2003, pet. denied ) .......................................................... 20

*Gallagher Healthcare Ins. Services v. Vogelsang,* 312 S.W.3d 640, 654
(Tex. App.—Houston [1st Dist.] 2009, pet. denied) .......................................... 40

*Gambling Paraphernalia Devices v. State*, 2002 Tex. App. LEXIS 3613, *5
(Tex. App.—Tyler 2002, no pet.) ................................................................. 7

*Gomez v. Zamora*, 814 S.W.2d 114, 118 (Tex. App.—Corpus Christi 1991, no writ) .......... 44

*Grace v. Orkin Exterminating Co.*, 255 S.W.2d 279, 285
(Tex. Civ. App.—Beaumont 1953, writ ref'd n.r.e.) .......................................... 25

*Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 n.1 (Tex. 1992) ....................... 52

*Hospital Consultants, Inc. v. Potyka*, 531 S.W.2d 657, 662 (Tex. Civ. App.—
San Antonio 1975, writ ref'd n.r.e.) ............................................................. 24

*IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W .3d 191, 197 (Tex. App.—
Fort Worth 2005, no pet.) ......................................................................... 31

*In the Interest of A.L.J.,* 929 S.W.2d 467, 472 (Tex. App.—Tyler 1996, writ denied) ......... 19

*In re Cauley*, 437 S.W.3d 650, 657 (Tex. App.—Tyler 2014, orig. proceeding) ............. 31, 34

*John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied)................................................................ 41, 46, 48, 59, 50

*Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex. 2002)........................ 16, 57

*Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,* 793 S.W.2d 660, 663 (Tex. 1990)........ 50

*Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656 (Tex. 1995) ........ 20, 21

*Lazer Spot, Inc. v. Hiring Partners, Inc.,* 387 S.W.3d 40, 46 (Tex. App.—Texarkana 2012, pet. denied)............................................................................................... 25

*Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 120 (Tex. 1970) .................................. 51

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009)............................................................................................................ 22

*Marsh United States, Inc. v. Cook*, 354 S.W.3d 764, 773, 768 (Tex. 2011) .................... 23, 44

*McClure v. Attebury*, 20 S.W.3d 722, 729 (Tex. App.—Amarillo 1999, no pet.) ................... 6

*McConathy v. McConathy*, 869 S.W.2d 341, 342 (Tex. 1994) .............................................. 18

*Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 599 (Tex. App.— Amarillo 1995, no writ) ................................................................................ 22

*Morgan v. City of Alvin*, 175 S.W.3d 408, 420 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ................................................................... 8

*National Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 461 (Tex. 1993) ........................ 39

*Numed v. McNutt*, 724 S.W.2d 432, 435 (Tex. Civ. App.—Fort Worth 1987, no writ) .. 32, 38

*Patel v. City of Everman*, 179 S.W.3d 1, 17 (Tex. App.—Tyler 2004, pet. denied).. 44, 46, 49

*Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 387-88 (Tex. 1991)......................................................... passim, 44, 45, 46, 47, 48, 51

*Philip H. Hunke, D.D.S. v. Wilcox*, 815 S.W.2d 855, 858 (Tex. App.— Corpus Christi 1991, writ denied)................................................................ 36

*Rest. Teams Intern., Inc. v. MG Sec. Corp.*, 95 S.W.3d 336, 339 (Tex. App.— Dallas 2002, no pet.) ................................................................................... 6

*Roberts v. Clark*, 188 S.W.3d 204, 208 (Tex. App.—Tyler 2002, pet denied).......... 16, 17, 19

*Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76 (Tex. 1989)................................................ 21

*Sentinel Integrity Solutions, Inc. v. Mistras Grp., Inc.,* 414 S.W.3d 911, 921 (Tex. App.— Houston [1st Dist.] 2013, pet. denied) ....................................................... 53

*Sharma v. Vinmar Int'l, Ltd.,* 231 S.W.3d 405, 424 (Tex. App.—Houston

[14[th] Dist.] 2007, no pet.) ......................................................................... 35

*Simon v. Tudor Ins. Co.,* 2014 Tex. App. LEXIS 1321, 18-19 (Tex. App.—

Dallas 2014, no pet.) ................................................................................... 8

*Sivley v. Sivley*, 972 S.W.2d 850, 861 (Tex. App.—Tyler 1998, no pet.) .............................. 7

*Sparkman v. Kimmey*, 970 S.W.2d 654, 659 (Tex. App.—Tyler 1998, pet. denied) ............. 19

*Star-Telegram, Inc. v. Walker*, 834 S.W.2d 54, 57 (Tex. 1992)....................................... 35, 38

*Stone v. Griffin Communications & Sec. Sys., Inc.*, 53 S.W.3d 687, 696, no pet.) .......... 41, 42

*Tex. Dep't of Pub. Safety Officers Assn. v. Denton*, 897 S.W.2d 757, 761 (Tex. 1995)......... 40

*Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994) .............................. 34

*Travel Masters, Inc. v. Star Tours, Inc.* 827 S.W.2d 830, 832 (Tex. 1991) ........................... 22

*U.S. Risk Ins. Group, Inc. v. Woods*, 399 S.W.3d 295, 301

(Tex. App.—Dallas 2013, no pet.)................................................................... 48

*Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 951-52 (1960) 44, 48

*Webb v. Hartman Newspapers, Inc.*, 793 S.W.2d 302, 303 (Tex. App.—Houston

[14[th] Dist.] 1990, no writ) ............................................................... 45, 46, 50, 51

*World Help v. Leisure Lifestyles*, 977 S.W.2d 662, 673

(Tex. App.—Fort Worth 1998, pet. denied) ...................................................... 21

*Wylie v. Hide a Way Lake Club, Inc*., 2013 Tex. App. LEXIS 15382,

*31 n.10 (Tex. App.—Tyler 2013, pet. denied) .................................................. 20

*Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 660-61, 663-64

(Tex. App.—Dallas 1992, no writ) ..................................................... 22, 45, 46, 50, 51

**Statutes**

TEX. BUS. & COMM. CODE § 15.05.............................................................................. 22

TEX. BUS. & COMM. CODE §§ 15.50-15.52 ................................................................. 5

TEX. BUS. & COMM. CODE § 15.50................................................................. 15, 22, 40

TEX. BUS. & COMM. CODE § 15.51(b), (c).......................................... 22, 40, 41, 50, 54

**Rules**

TEX. R. APP. P. 33.1(a) ............................................................................................... 7

TEX. R. CIV. P. 90, 91 ................................................................................................. 13

## STATEMENT REGARDING ORAL ARGUMENT

Appellee believes that the issues have been fully briefed and does not believe that oral argument will aid this Court. Appellee will participate in oral argument if Appellant's request for oral argument is granted.

Appellee Robert "Josh" Pierce ("Pierce") provides the following statement of facts and requests that this Court affirm the judgment and would show this Court as follows:

## I. STATEMENT OF FACTS

Appellee Synergy IOM LLC ("Synergy") and Appellant are among a number of companies providing intraoperative neurophysiologic monitoring ("IOM") to hospitals. (CR 231). Appellant contracts with hospitals where other IOM companies simultaneously contract with that same hospital. (CR 231, 962).

While a surgeon decides whether to have IOM during a surgical procedure (CR 231-34, 821), Appellant does not contract with surgeons (CR 231-34) and does not consider surgeons to be its customers. (CR 231-34). The surgeon merely requests that the surgical facility have IOM available. (CR 231-34).

The surgical facility (*e.g.*, a hospital) contracts directly with the IOM provider (CR 231-32, 821, 856), and it is the hospital that schedules the IOM procedure and assigns cases to Appellant. (CR 235-37).[1] Appellant cannot provide services in a hospital unless it contracts with that hospital. (CR 231-34). Appellant characterizes itself in this process as a subcontractor to the hospital. (CR 266).

Pierce is a former employee of Appellant and is certified to perform IOM. (CR 172). As an IOM technician, Pierce works in surgical operating rooms where he connects monitoring equipment to patients. (CR 172). Pierce does not interpret the IOM data, but stays in the operating room while a neurologist remotely monitors the data throughout

---

[1] Appellant does not know how it is selected to provide IOM services on a given case. (CR 235-37).

2

surgery. (CR 172). Pierce does not perform IOM outside the four walls of a surgical facility. (CR 172).

While Appellant's employee, Pierce did _not_ negotiate with hospitals and was _not_ involved in meetings where negotiations occurred. (CR 173). He was _not_ asked to solicit customers and did _not_ solicit customers on behalf of Appellant. (CR 173). Pierce was never given Appellant's marketing materials and does not recall receiving any information from Appellant that Appellant indicated was proprietary or secret. (CR 173).

Pierce signed an employment agreement containing a covenant not to compete (the "Covenant"). (CR 173, 176-90). In the employment agreement, Appellant agreed to advance Pierce the costs for certification training; however, Appellant did so in exchange for: (*i*) Pierce's promise to work for 48 months after becoming board eligible; or (*ii*) repayment of $5,000.00, with interest. (CR 183-186). Pierce is not prohibited from using or disclosing this training in any manner whatsoever. (CR 179-80).

The Covenant prohibits Pierce from, among other things, engaging in any business or activity which "directly" or "indirectly" competes with Appellant; there is also an "all customer" non-solicitation provision. (CR 181-82). Although "directly" and "indirectly" are undefined, Appellant admits that an IOM tech working with surgeon with whom Appellant has not previously worked is neither directly nor indirectly competitive with it. (CR 220-21).

Dr. Brent Alford ("Dr. Alford") is a surgeon. (CR 173). For a short period of time in 2012, Dr. Alford owned a monitoring company and his company used Appellant as a subcontractor to provide monitoring services. (CR 209-10). This monitoring company

paid Appellant $150 per procedure for monitoring services; however, this relationship ended at the conclusion of 2012. (CR 209-10).

Appellant provided IOM at one or more hospitals where Dr. Alford was the surgeon. (CR 173, 208). Pierce occasionally served as the technician on some of those surgeries. (CR 173).

Synergy was formed in 2012 and was owned partially by Dr. Alford. (CR 173, 208, 937).[2]  However, Dr. Alford is not employed by Synergy and does not manage Synergy. (CR 937).

By March 2013, Synergy was routinely handling all IOM for Dr. Alford's cases, with only minimal overflow being handled by Appellant. (CR 211, 208, 277-79). Appellant characterizes this minimal overflow as a "*backstop*" for the time or two when Synergy did not have enough IOM personnel to handle the work or did not have privileges at a hospital. (CR 251).

Pierce worked for Appellant for approximately eight years. (CR 172).  He left in October 2013 and went to work for Synergy. (CR 173, 987).  Pierce works as an IOM technician for Synergy. (CR 173).

Since becoming a Synergy employee, Pierce has <u>not</u> participated in any surgery where the surgeon was a surgeon that he had worked with while an employee of Appellant, this includes Dr. Alford. (CR 173, 958).  He has only worked with two surgeons while at Synergy (CR 958) and Synergy assigned Pierce primarily to Victory Medical Center in Plano, a hospital that he did **not** work at while an employee of

---

[2] The other owners are RMR Grantor Trust, Crush Consulting, LLC, and Dr. Samir Lapsiwala. (CR 942).

Appellant (CR 934, 958, 964). Pierce also has _not_ solicited surgeons, hospitals, or surgery centers to do business with Synergy. (CR 173-74).

## II. SUMMARY OF ARGUMENT

Appellant argues that the trial court abused its discretion by: (*i*) failing to grant a continuance; (*ii*) failing to grant special exceptions; and (*iii*) failing to strike summary judgment evidence. Appellant waived many of these complaints and the trial court's actions were not an abuse of discretion. To the extent any error occurred, it was harmless.

The Covenant is invalid because Appellant did not have an interest worthy of protection and did not give Pierce anything reasonably related to such an interest. With regard to training, the Covenant also fails because it was not designed to enforce Pierce's return promise regarding training.

The Covenant is also unenforceable because it contains restraints (geographic, duration, and activity) that are unreasonable. Assuming (*arguendo*) Appellant affirmatively and unequivocally sought reformation, Appellant failed to establish reasonable, alternative restraints. Reformation was, therefore, properly denied.

Appellant also lacked evidence supporting the elements of its causes of action. Appellant has no evidence of damages and is additionally foreclosed from obtaining damages under the Covenant Not to Compete Act[3] (the "Act"). This is dispositive of

---

[3] TEX. BUS. & COMM. CODE §§ 15.50-15.52.

5

Appellant's breach of contract claim. Further, there is no evidence that Pierce breached any fiduciary obligation. The trial court's judgment should be affirmed.

## III. ARGUMENT & AUTHORITIES

### A. APPELLANT HAD ADEQUATE TIME FOR DISCOVERY (APPELLANT'S ISSUE #1)

Appellant contends that it had inadequate time to conduct discovery; thus, it argues the trial court abused its discretion by failing to grant a continuance.[4] (CR 1458). The trial court did not abuse its discretion by denying Appellant's continuance request.

Whether an adequate time for discovery has occurred is case specific and determined by factors such as the nature of the cause of action, the nature of the evidence necessary to controvert the no-evidence motion, and the length of time the case had been active in the trial court. *Rest. Teams Intern., Inc. v. MG Sec. Corp.*, 95 S.W.3d 336, 339 (Tex. App.—Dallas 2002, no pet.).

Some matters may require no or minimal discovery in order to respond to summary judgment. *McClure v. Attebury*, 20 S.W.3d 722, 729 (Tex. App.—Amarillo 1999, no pet.); *Rest. Teams,* 95 S.W.3d at 339. Requiring parties to conduct discovery when it will make no difference is a waste of time and expense. *Carter v. MacFadyen*, 93 S.W.3d 307, 311 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

### 1. Appellant Cannot NOW Complain of Scheduling Order

*Appellant complains to this Court* of the *expedited* nature of the scheduling order claiming that the order resulted in a condensed and the inadequate discovery period.[5]

---

[4] App. Br. p. 15.

However, Appellant **did not complain to the trial court** of the scheduling order in any manner whatsoever. (CR 768-72). Appellant cannot complain of the scheduling order when it did not raise that complaint below. TEX. R. APP. P. 33.1(a); *Sivley v. Sivley*, 972 S.W.2d 850, 861 (Tex. App.—Tyler 1998, no pet.).

## 2. Different Issues Raised On Appeal

Appellant's briefing is a substantial departure from its motion for continuance. Other than the mention of two depositions, both scheduled and occurred prior to the grant of judgment, Appellant's motion for continuance stated **_only_** a *general* need for evidence of "lost profits" but failed to: (*i*) identify any specific discovery requests or evidence that it lacked; or (*ii*) how it was prevented from responding to the summary judgment motions by the lack of any evidence or Synergy's discovery responses. (CR 768-72).[6]

**_On appeal_**, Appellant recites a list of discovery requests to which Synergy objected. Neither the list nor these arguments were presented to the trial court.[7] The complaint on appeal must also be the same as that presented in the trial court. *Gambling Paraphernalia Devices v. State*, 2002 Tex. App. LEXIS 3613, *5 (Tex. App.—Tyler 2002, no pet.). Appellant has not raised the same complaint; thus, this Court should not consider Appellant's argument.

---

[5] Appellant's Br. p. 17.

[6] Appellant mentioned Dr. Alford's deposition *might* produce evidence of Synergy's intent to interfere, but Appellant does inform the Court why this is needed - Appellant presented text messages from Dr. Alford to argue Synergy's intent (CR 1022-23, 1064-67) and it took Pierce's and Dr. Alford's depositions.

[7] This is in addition to the new complaint about the scheduling order.

7

### 3. **Appellant's Motion and Brief Are Insufficient**

As previously noted, other than the two above-mentioned depositions both of which actually occurred, Appellant's continuance motion stated generally a need evidence of "lost profits." General allegations in a motion for continuance are insufficient; the motion or the affidavit must state specific reasons for the request. *Morgan v. City of Alvin*, 175 S.W.3d 408, 420 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Appellant was required, among other things, to identify for the trial court what was material and why. *Blake v. Lewis*, 886 S.W.2d 404, 409 (Tex. App.—Houston [1st Dist.] 1994, no writ).

On appeal Appellant is required, among other things, to provide this Court with "substantive analysis explaining why denial of the motion[] for continuance . . . was improper" and "address how the additional time and discovery would have allowed [Appellant] to respond to the motions for summary judgment." *Simon v. Tudor Ins. Co.,* 2014 Tex. App. LEXIS 1321, 18-19 (Tex. App.—Dallas 2014, no pet.). Appellant's brief does neither.[8] It was not abuse of discretion for the trial court to deny such an insufficient motion and Appellant has further waived this point on appeal by its deficient brief.

### 4. **No Abuse of Discretion in Denying Appellant's Continuance**

Even if Appellant's continuance complaint is considered, the trial court did not abuse its discretion. Appellant's motion for continuance stated that the depositions of Dr.

---

[8] For example, Appellant provides this Court with no evidence that it learned anything in either Dr. Alford's or Dr. Craven's deposition that would have be relevant and could have been used in responding to the summary judgment motions, had the trial court granted a continuance. Appellant also fails to address any of the written discovery that it complains of for the first time on appeal.

Alford and Pierce's expert (Dr. Cravens) had been scheduled for June 10 and 13, respectively. (CR 769). These depositions occurred; however, Appellant provides no argument and fails to direct this Court to any evidence that it uncovered in either deposition that Appellant did not have when it responded to Pierce's summary judgment. Thus, Appellant has not shown the trial court abused its discretion based on the assertions raised in the motion for continuance.

The written discovery responses that Appellant *currently* identifies as "lacking" are: (*i*) all hospitals in which Synergy has worked; (*ii*) contact information for every surgeon that Pierce has worked with and hospital he has worked in; (*iii*) all documents between Synergy and Dr. Alford regarding Appellant, Pierce, and hiring IOM techs; (*iv*) Synergy's ownership and corporate documents; (*v*) all documents regarding this case; (*vi*) Synergy's bills and receipts for IOM procedures where Pierce was the tech; and (*vii*) Synergy's profit and loss statements, account of income and expenses and its general ledger.[9]

Pierce only worked with two surgeons (CR 962) and Appellant was provided with a list of every procedure in which Pierce was involved, including identifying the date, time, hospital and doctor. (CR 118, 133-38, 949-54). Appellant attached this list as an

---

[9] Much of Appellant's discovery is manifestly overly broad and not reasonably tailored to only include information regarding Pierce. Nor is there anything to show why the locations where Synergy operated was necessary for Appellant's summary judgment response. If Appellant had such a valuable relationship with surgeons, as it tries to convince this Court, why would Appellant need to be provided with contact information provided by Synergy. Finally, there is nothing showing why any of the following was necessary to respond to Pierce's summary judgment Synergy's ownership and corporate documents and all documents regarding this case.

exhibit to its summary judgment response. (CR 949-54). Thus, it did not need a continuance for this information.

The remaining discovery identified as lacking in Appellant's brief is Synergy's revenue, profits, and other financial information (together "Synergy's revenues/profits"). It was unnecessary for Appellant to have Synergy's revenues/profits in order to respond to the summary judgment motions.

Foremost, Appellant was absolutely barred by the Act from obtaining damages for any alleged violation of the Covenant because it contained unreasonable restraints.[10] As a consequence, lost profits are immaterial Appellant's summary judgment response. Therefore, a continuance was unnecessary to obtain Synergy's revenues/profits.

Second, Appellant testified that it had documents showing its actual economic damages, including lost profits. (CR 339-41, 349). It chose not to offer that evidence. Appellant cannot create a need for a continuance by refusing to come forward with its own documents.

Next, *If* Synergy's revenues/profits were relevant to anything, it was only to the *quantum* of Appellant's alleged damages. Appellant must first, however, establish it suffered damages before there is a need to quantify. It could not establish this predicate fact.

Pierce's leaving had nothing to do with any decline in Appellant's revenues from Dr. Alford's group. (CR 337-38). When asked — "*Do you have any evidence that Josh

---

[10] Section III(G)(1), *infra*.

10

*had anything to do with Dr. Alford's decision to stop using Neurodiagnostics,*" the answer was "*I don't know.*" (CR372).

Except for occasions where it was short staffed, Appellant repeatedly admitted that it did not know whether it had lost any business following Pierce leaving. (CR 342-343, *see also* CR 332-33). When asked:

> **Q.** Since Josh — since his employment with Neurodiagnostics was terminated, from that time to the present are you able to identify a single surgical procedure that Neurodiagnostics lost as a result of him working for Synergy?
> **A.** I don't know. [11]

(CR 372-73). If Appellant did not lose business, Synergy's revenues/profits were neither material nor necessary to respond to Pierce's summary judgment motion. Therefore, the trial court could not have abused its discretion in deny the request for a continuance.

Despite claiming to have its own evidence of damages, failing to establish it had suffered an injury, and the statutory bar to the recovery of damages, Appellant argues that Synergy's revenues/profits are relevant under *Arabesque Studios, Inc. v. Academy of Fine Arts Int'l*, 529 S.W.2d 564 (Tex. App.—Dallas 1975, no writ). Appellant's reliance on *Arabesque* is misplaced.

In *Arabesque,* the departing employee admittedly took thirty-two students from his former employer and moved those students to the new employer's business. *Id.* at 569. Because the departing employee lured away the customers, the *Arabesque* Court held the

---

[11] Appellant had a list of every IOM procedure (including the doctor and facility) that Pierce performed while at Synergy. (CR 118, 133-38, 949-54). Appellant had sufficient information by which to identify any lost procedures.

11

jury could infer the profits the new employer received would have, at least in part, accrued to old employer. *Id.* No similar evidence exists in this case.

Here, Appellant admits that months **before** Pierce left its employ, Appellant was doing little to no IOM work where Dr. Alford was the surgeon. (CR 208, 211, 277-78). Appellant proffered no evidence that Pierce's change in employment caused it any injury (CR 337-38, 342, 343, 372, 373, 332-33) and whatever revenue Appellant had historically received from procedures where Dr. Alford or his group was the surgeon had ceased long before Pierce became a Synergy employee. (CR 337).

Unlike *Arabesque*, Pierce stopped working for Appellant months **after** Appellant was no longer being assigned by hospitals to Dr. Alford's and his group's surgical cases. In other words, Pierce was <u>not</u> the pied piper luring Dr. Alford or his group away. *Arabesque* is inapposite and Synergy's revenues/profits were neither material nor necessary for Appellant to respond to Pierce's summary judgment motion. Therefore, the trial court did not abuse its discretion in denying Appellant's request for a continuance.

## B. ADEQUATE NOTICE OF SUMMARY JUDGMENT GROUNDS (APPELLANT'S ISSUE #2A-B)[12]

Appellant asserts Pierce's summary judgment motion failed to delineate between traditional summary judgment grounds and no-evidence summary judgment grounds. Appellant further asserts that Pierce's no-evidence grounds failed to state the specific elements for which Pierce claimed a lack of evidence. Based on these assertions, Appellant argues the trial court erred by failing to grant its special exceptions.

---

[12] Appellant's issue 2c is directed solely to Synergy's motion for summary judgment.

12

A trial court has broad discretion in ruling on special exceptions. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). A trial court's ruling will be reversed only if there has been an abuse of discretion. *Aldous v. Bruss*, 405 S.W.3d 847, 857 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A simple reading of Pierce's motion establishes the trial court did not abuse its discretion.

## 1. Appellant's Special Exceptions are Insufficient

Appellant's special exceptions, as well as its briefing to this Court, fail to identify a single paragraph, section, or ground that Appellant asserts is objectionable. (CR 812-14). Appellant's special exceptions are directed to the entirety of the summary judgment motion.

Special exceptions must "point out intelligibly and with particularity" the alleged defect or omission in the pleadings. TEX. R. CIV. P. 91. When special exceptions fail to specifically point out the defective allegations, they constitute a general demurrer and are prohibited. TEX. R. CIV. P. 90; *see also Castano v. San Felipe Ag., Mfg., & Irrigation Co.*, 147 S.W.3d 444, 453 (Tex. App.—San Antonio 2004, no pet.). Because Appellant failed to "point out intelligibly and with particularity" the complained-of defects, the trial court did not abuse its discretion in denying the special exceptions.

## 2. Alleged Failure to Delineate Between Grounds

### (a). Pierce's Motion Sufficient

Pierce's summary judgment motion is entitled "Defendant's No Evidence Motion for Summary Judgment." Pierce states "Defendant brings his no-evidence summary judgment after attempted discovery. Plaintiff has no evidence of the elements of

Plaintiff's causes of action." (CR 290). Pierce then lays out in numbered paragraphs the evidence Pierce believes does not exist. Pierce's motion for summary judgment more than adequately notifies Appellant of the type of summary judgment being raised – no evidence.

### (b). Incorporation of Synergy's Motion for Summary Judgment

Pierce also adopted and incorporated Synergy's motion for summary judgment in its entirety. (CR 289). Synergy's motion for summary judgment clearly delineated between the summary judgment grounds raised, in each instance where Synergy challenged a lack of evidence, Synergy stated there is "no evidence" and **underlined** the words "no evidence" to emphasize that Synergy was making a no-evidence challenge. This is shown in Paragraphs 29, 36, 37, 43, 50, 51, 55, 56, 59, 62, 72, 76, 88, 90, 97, 104, 105, 110, and 111 of Synergy's motion. (CR 149, 151-155, 158-59, 162, 164-67).

Synergy's traditional summary judgment grounds, on the other hand, were supported by evidence and textually indicated a basis other than a lack of evidence. By way of example, Paragraphs 38-40 ("evidence conclusively establishes …" and "Appellant admits"); Paragraph 58 ("conclusory claims disproven by the facts); Paragraphs 63-66 (entire section does not mention "no evidence"); Paragraphs 67-71 (same); Paragraph 87 "as a matter of law it is . . . ."). (CR 148, 153, 155-58, 161-62, 167-68). Accordingly, the trial court did not abuse its discretion when it denied Appellant's special exceptions.

14

### (c). Pierce Identified Elements for Which There Was No Evidence

Despite Appellant's assertion, Pierce's motion identifies the evidence that Pierce does not believe exists. The following summary judgment grounds are clearly set forth in Pierce's motion.

- "Boldery presents no evidence as to confidential information or proprietary information of Plaintiff."

- "As such, Plaintiff has wholly failed to present any evidence of a valid or enforceable contract, see Summary Judgment Evidence contained herein as well as Defendant Synergy IOM, LLC's Motion for Summary Judgment."

- "Plaintiff wholly fails to present any evidence as to the five (5) years being a reasonable restraint and does not impose a greater restraint than is necessary to protect the proprietary, confidential or goodwill interests of Plaintiff."

- "Plaintiff wholly fails to present any evidence as to the geographic areas as being reasonable restraint and does not impose a greater restraint than is necessary to protect the proprietary, confidential or goodwill interests of Plaintiff Texas Business and Commerce Code §15.50. Plaintiff presents no evidence of any contractual relationship with any hospital/customer in Wise, Ellis, Johnson, Hood, Denton, Kaufman, Parker or Rockwall counties (Exhibit 10)."

- "Upon reformation, there can be no prior damages. As such, Plaintiff may not collect damages prior to reformation. Defendant moves for summary judgment that Plaintiff has no damages."

- "Plaintiff also brings a cause of action for breach of fiduciary duty, yet again does not bring forth any evidence of such a breach during the time of his employment."

- "Plaintiff presents no evidence that Defendant took any proprietary or confidential information."

(CR 288-95).

15

Pierce identified what it was that Appellant had to prove and further identified what evidence Appellant lacked. To the extent Pierce also incorporated Synergy's motion for summary judgment in its entirety into Pierce's motion, Synergy's motion identified the elements for which Appellant lacked evidence.[13] This is exactly what is required of a no-evidence challenge. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex. 2002).

## C. ADMISSION OF SUMMARY JUDGMENT EVIDENCE (APPELLANT ISSUE #3)

Next, Appellant assigns error to the trial court's refusal to strike Pierce's summary judgment exhibits 7, 8, and 10. Appellant also argues that Pierce's incorporation of Synergy's motion is improper because Synergy's motion is not competent summary judgment evidence. These arguments will be addressed in turn.

### 1. Exhibit 7 – Email Between Counsel

Pierce acknowledges that Exhibit 7, an email exchange between counsel, was not competent summary judgment evidence because it was not authenticated. Admission of incompetent evidence does not require reversal when competent evidence supports the judgment. *Roberts v. Clark*, 188 S.W.3d 204, 208 (Tex. App.—Tyler 2002, pet denied). No reversible error exists if the evidence in question is cumulative or is not controlling on a material issue dispositive of the case. *Id.* Reversal is inappropriate, unless appellant demonstrates that the entire case turns on the evidence improperly admitted. *Id.* Whether the case turns on the evidence at issue by reviewing the entire record. *Id.*

---

[13] See Section III(B)(2)(b), *supra*. Appellant does not contend that Synergy's motion failed to sufficiently specify the summary judgment grounds being raised. Therefore, there is no issue on those no-evidence grounds, which were adopted and incorporated into Pierce's motion.

No summary judgment ground relies wholly upon Exhibit 7. Furthermore, the trial court did not need to rely on Exhibit 7 to grant judgment because it is merely cumulative of other, more direct evidence.

Here, Pierce challenged Appellant's lack of evidence regarding damages. To bolster the lack of evidence, Pierce provided Boldery's testimony that she had never spoken to the damage expert and that she hoped she *might* be able to provide him information at some indefinite future date. (CR 346).

Exhibit 7 was merely additional confirmation that Appellant had no damage expert opinions because Appellant's counsel admitted in that email that taking the deposition of Appellant's damage expert was unnecessary because he had "nothing fruitful" to say. Although Pierce's Exhibit 7 was not authenticated, the court's refusal to strike Exhibit 7 does not warrant reversal because that Exhibit was cumulative of Appellant's testimony and because it was not controlling on a material issue dispositive of the case. *Roberts,* 188 S.W.3d at 208.

## 2. **Exhibit 8 – Temporary Injunction Hearing Transcript**

Pierce tendered excerpts from the temporary injunction hearing (Exhibit 8); however, he did not include the reporter's certification. (CR 436-38). In his summary judgment reply, Pierce filed a copy of the certification. (CR 1343-44). Appellant contends the hearing excerpts were not authenticated.[14] Appellant further claims that it is

---

[14] Appellant's Br. pp. 31-32.

unclear who was speaking on the cited pages; thus, making any consideration of the excerpts improper.[15]

Equally available transcripts do not require authentication *via* a reporter's certification or an affidavit. *See McConathy v. McConathy*, 869 S.W.2d 341, 342 (Tex. 1994) (stating "[a]ll parties have ready access to depositions taken in a cause, and thus excerpts submitted with a motion for summary judgment may be easily verified as to their accuracy. Authentication is not necessary and is not required under the present rules."). The same is true for these temporary injunction hearing excerpts.

As to Appellant's complaint that it is unclear "*who*" is testifying on the cited pages, Appellant need only look to its copy of the transcripts to identify the speaker (*McConathy*, 869 S.W.2d at 342). Moreover, the record contained everything needed to independently determine who was testifying. Synergy, as part of its summary judgment evidence, included the certificate and the reporter's table of contents identifying "*who's*" testimony appeared on the cited pages. (CR 201-05). The trial court, therefore, did not abuse it discretion in refusing to sustain Appellant's evidentiary objections.

### 3. Exhibit 10 - Plaintiff's Customer List

Appellant next complaints of Pierce's tender of Appellant's customer contract list (Exhibit 10). Appellant argues that Exhibit 10 was unauthenticated; however, authentication by affidavit was unnecessary. When considering a summary-judgment motion, a trial court may judicially notice documents that are part of its record in the case at issue, since they are already on file and available for the court's consideration.

---

[15] Appellant's Br. p. 31.

18

*Sparkman v. Kimmey*, 970 S.W.2d 654, 659 (Tex. App.—Tyler 1998, pet. denied); *In the Interest of A.L.J.,* 929 S.W.2d 467, 472 (Tex. App.—Tyler 1996, writ denied). Judicial notice is mandatory when a party requests the court do so and the party supplies the court "with the necessary information." TEX. R. EVID. 201(d); *see also Brown v. Brown*, 145 S.W.3d 745, 750 (Tex. App.—Dallas 2004, pet. denied).

Pierce requested the trial court to take judicial notice of its entire file (CR 289) and then identified Appellant's customer list as having been *published* by Appellant. (CR 289-90). Exhibit 10 also bears another exhibit sticker – **Plaintiff's Exhibit 6,** from when it was previously published by Appellant. Appellant's customer list was previously marked as Plaintiff's Exhibit 6 in connection with the temporary injunction hearing. Thus, Exhibit 10 a/k/a Plaintiff's Exhibit 6 was subject to judicial notice and did not need to be separately authenticated by affidavit. Therefore, the trial court did not err in refusing to strike Pierce's Exhibit 10.

Assuming (*arguendo*) the trial court improperly admitted Exhibit 10, the judgment still should be affirmed. Pierce cited to Exhibit 10 to show that Appellant's customer list was not confidential because it had been published. Exhibit 10 is cumulative of the customer list that Appellant filed as an attachment to its motion for reconsideration (CR 497-98, 860-61). Even if the trial court improperly admitted Exhibit 10, it is cumulative of competent evidence; therefore, reversal is inappropriate and the judgment should be affirmed. *Roberts,* 188 S.W.3d at 208.

19

## D. INCORPORATION OF SYNERGY'S MOTION FOR SUMMARY JUDGMENT

Appellant next argues that Pierce's adoption and incorporation of Synergy's motion for summary judgment is improper citing *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656 (Tex. 1995). Appellant's reliance on *Laidlaw* is misplaced.

*Laidlaw* stands for the unremarkable proposition that a party's own pleadings are not competent evidence. *Id*. at 660. Pierce, however, is not using Synergy's pleading as evidence. Rather, Pierce's motion is adopting and incorporating the arguments and competent evidence, submitted therewith. (CR 289).

Nothing in Texas Rule 166a prohibits a party from adopting and incorporating another's party's motion for summary judgment. Texas courts, including this Court and the Texas Supreme Court, allow adoption and incorporation. *See, e.g., Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 612 (Tex. 1996) (upholding summary judgment for Firestone where "Firestone also relied upon the Barajases' partial motion for summary judgment against Kelsey-Hayes and their summary judgment evidence that showed, as a matter of law, Kelsey-Hayes manufactured the wheel in question."); *Flory v. Daimler Chrysler Corp*., 2003 Tex. App. LEXIS 10235, 2 (Tex. App.—Tyler 2003, pet. denied ) (stating "Ahmed filed a motion for summary judgment, in which she incorporated by reference 'all pleadings and letter briefs supporting Co-Defendant's Motion for Summary Judgment as if [the] same were set out at length herein.'"); *Wylie v. Hide a Way Lake Club, Inc*., 2013 Tex. App. LEXIS 15382, *31 n.10 (Tex. App.—Tyler 2013, pet. denied) (recognizing adoption of another party's summary judgment motion);

20

*World Help v. Leisure Lifestyles*, 977 S.W.2d 662, 673 (Tex. App.—Fort Worth 1998, pet. denied) (recognizing one "Kingdom also adopted 'the same position as Turner . . . as to the law and the facts . . . except Kingdom has agreed that Turner will be superior to Kingdom in payment . . . .'"). *Laidlaw* is, therefore, inapplicable.

Appellant also cites *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76 (Tex. 1989) for the proposition that "a general reference to a voluminous record [that] does not direct the trial court and parties to the evidence on which the movant relives is insufficient." Appellant's reliance on *Rogers* is equally misplaced.

In *Rogers*, the summary judgment movant sought summary judgment based on a limitations defense and asserting:

```
Movant would show that the depositions and exhibits on
file regarding Torreyana Oil Corporation (Harry Allred
deposition), and the successors of Torreyana who
engaged in drilling and production operations, show
conclusively that peaceable and adverse possession of
the lease in question began in 1979 and continued for
a period in excess of three years prior to the filing
of plaintiff's suit on April 2, 1984.
```

*Id*. at 81.  The *Rogers* court characterized this as a mere reference to "anything on file" and held that such a general reference was insufficient.

Contrary to Appellants' comparison of *Rogers'* reference to "anything on file" and Pierce's adoption and incorporation of Synergy's motion, the differences between the two could not be starker.  Here, Pierce adopted a specific motion and did so by name. Synergy's motion, in turn, had numbered paragraphs raising summary judgment grounds and directing the trial court to *specific* evidence, which evidence was submitted along with Synergy's motion.  Pierce's adoption of Synergy's motion did not require the trial

court to search a voluminous record looking for proof of Pierce's claim. Pierce was not asking the trial court to do anything more than it was already obliged to do - consider Synergy's motion and evidence. Appellant's objection to Pierce's adoption of Synergy's motion for summary judgment was properly denied.

### E. COVENANT UNENFORCEABLE BECAUSE IT IS NOT ANCILLARY TO AN OTHERWISE ENFORCEABLE AGREEMENT (APPELLANT'S ISSUE #4B)

A covenant not to compete is presumed illegal. TEX. BUS. & COMM. CODE § 15.05. The Act creates a safe harbor allowing a covenant to be enforced; provided, it strictly complies with the Act. *Travel Masters, Inc. v. Star Tours, Inc.* 827 S.W.2d 830, 832 (Tex. 1991); *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 599 (Tex. App.—Amarillo 1995, no writ); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 660 (Tex. App.—Dallas 1992, no writ). Appellant has the burden to establish compliance with the Act. TEX. BUS. & COMM. CODE ANN. § 15.51(b).

Two initial inquiries are made when assessing compliance with Act: (*i*) is there an "otherwise enforceable agreement," and (*ii*) is the covenant "ancillary to or part of" that agreement at the time the otherwise enforceable agreement was made. TEX. BUS. & COMM. CODE ANN. § 15.50; *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009); *Evan's World Travel, Inc. v. Adams*, 978 S.W.2d 225, 230-31 (Tex. App.—Texarkana 1998, no pet.)

In order to be "ancillary" the:

    a. consideration given by the employer in the otherwise enforceable agreement must be reasonably related to an interest worthy of protection; and

b. covenant must be designed to enforce the employee's return consideration (*e.g.*, a promise) in the otherwise enforceable agreement.

*See, e.g., Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 773 (Tex. 2011); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 649 (Tex. 2006).

Pierce asserted that Appellant had no evidence of confidential or proprietary information (CR 289) and that Appellant failed to present sufficient of an interest worthy of protection. (CR 291). Pierce's motion also incorporated Synergy's motion, which raised these and additional summary judgment grounds attacking the Covenant's failure to meet the statutory requirements for a valid noncompete. Appellant failed to bring forward competent evidence to satisfy its burden.

As discussed in more detail below, the only "consideration" that Appellant identified as having provided to Pierce as part of an "otherwise enforceable agreement" are: (*i*) training; (*ii*) customer information, including surgeon preferences; (*iii*) pricing; and (*iv*) technique. (CR 241, 263, 272, 275-77). Appellant would not identify or describe, even generally, any technique it believed to be a protectable (CR 275-77) or what was confidential as to the delivery of its service. (CR 368-69). Appellant only *generically* identified the other categories, but provided no details or evidence.

### 1. Training Does Not Support Covenant

#### (a). No Evidence that Training or Advancement of Funds for Training Was Worthy of Protection

Appellees challenged that Appellant had no evidence that the training Pierce received or Appellant's advancement of funds for that training was an interest worthy of

protection by a noncompete. (CR 291, 147-60). Without such proof, the provision of, or payment for, training was *not* ancillary to the Covenant.

Appellant responded by merely claiming that it had paid the cost of Pierce's certification training[16] (CR 822-23, 834, 835) and that such "training directly related to the type of work that [Pierce] did for [Appellant] and now does for Synergy." (CR 825-26, 836). Evidence of Appellant's advancement of funds for work related training, in and of itself, does not raise an issue of fact regarding whether the provision of training was an interest worthy of protection. Appellant's assertion would require this Court to hold that any training whatsoever, if it is job related, is automatically worthy of protection.

First, advancement of funds is not an interest worthy of protection. *Sheshunoff*, 209 S.W.3d at 650 (recognizing payment of money is not a protectable interest). Second, Appellant's contention that all work-related training is sufficient is incorrect. *See Daytona Grp. of Tex., Inc. v. Smith*, 800 S.W.2d 285, 290 (Tex. App.—Corpus Christi 1990, writ denied) (holding publicly available training is not a protectable interest); *Hospital Consultants, Inc. v. Potyka*, 531 S.W.2d 657, 662 (Tex. Civ. App.—San Antonio 1975, writ ref'd n.r.e.) (training given to emergency room physicians was not a protectable interest because it belongs to the employee); *Evan's World Travel*, 978 S.W.2d at 231 (training given to employee was not worthy of protection).

Appellant's response failed to connect the dots by failing to provide evidence establishing whether Pierce's certification training was, in fact, an interest worthy of

---

[16] It is a misstatement to say Appellant paid for training. Pierce re-paid for cost of training under the precise terms set forth in the employment agreement. (CR 183-86).

protection. Appellant came forth with nothing identifying any curriculum, content, or information that Pierce learned in that training that was unique to Appellant or that would be protectable for any reason whatsoever. Because Appellant failed to come forward with evidence that the training provided to Pierce was worthy of protection by a noncompetition agreement, Appellant failed to establish the agreement regarding training was ancillary to the Covenant.

### (b). Training and Advancement of Funds for Training Was NOT an Interest Worthy of Protection

In contrast, the training was conclusively shown not to be an interest worthy of protection. The mere fact "[t]hat a former employee was trained by the employer is not a ground for enforcing a restrictive covenant not to compete, even if the training was complex and extensive." *Custom Drapery Co. v. Hardwick*, 531 S.W.2d 160, 165 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ); *see Grace v. Orkin Exterminating Co.*, 255 S.W.2d 279, 285 (Tex. Civ. App.—Beaumont 1953, writ ref'd n.r.e.); *Lazer Spot, Inc. v. Hiring Partners, Inc.,* 387 S.W.3d 40, 46 (Tex. App.—Texarkana 2012, pet. denied). While Appellant suggests that there is some distinction between the cited cases and this case (CR 837), none exists. Just as in *Custom Drapery* and *Grace*, Appellant's promise to train is not identified in the employment agreement as "*quid pro quo*" for the Covenant. (CR 176-90).

Pierce acknowledges that "*specialized*" training involving a company's proprietary information *may* be worthy of protection; however, the facts necessary to warrant

25

protection do not exist in this case. Appellant admits there is nothing confidential or proprietary about the training that Pierce received and it is available in the open market.

```
Q.   And I believe you answered a question
     that Mr. Hampton asked.   There's
     nothing about the training --
A.   No.
Q.   -- that's confidential?
A.   No.
Q.   It's all in the public domain?
A.   Correct.
Q.   It just costs you time and money, right?
A.   Correct.
```

(CR 263).

Indeed, Appellant unequivocally testified that it did not care about protecting the educational training that Pierce received.

```
Q.   Let me see if I can ask it again.  Your
     concern is that Mr. Pierce was trained
     and then worked in an environment where
     he gained certain specialized knowledge
     and expertise.
A.   Um-hum.

Q.   You've got to say yes or no.
A.   Yes.

Q.   Okay.   And then because of that, he
     should be bound by the covenant not to
     compete that he signed prior to being
     trained or receiving any knowledge,
     specialized knowledge.
A.   Not the education, not –

Q.   You don't care about the education
     part.
A.   Correct.
```

(CR 244). The training in this case is "in the public domain" preventing it from being an interest worthy of protection. *See, e.g., Daytona Grp.*, 800 S.W.2d at 290.

26

Consequently, the training Pierce received is not an interest worthy of protection and is admittedly not an interest Appellant even seeks to protect.

Appellant's advancement of monies does not transform training, which does not warrant protection, into a protectable interest. *Sheshunoff*, 209 S.W.3d at 650 (recognizing payment of money is not a protectable interest). More importantly, Appellant's advancement of funds for training has been fully repaid, *precisely* as contemplated in the employment agreement.

Appellant agreed to advance funds for training, allowing Pierce to repay that advancement if he worked for 48 months after becoming board eligible. (CR 183-86). Pierce became board eligible in 2006 and worked for Appellant for more than 48 months after that time. (CR 843,[17] 173). Appellant was fully repaid its advancement of training costs, precisely as it had agreed. (CR 183-86). Pierce, therefore, effectively paid for his own training.

Appellant also argues that Pierce received and Appellant paid for continuing education and on-the-job training (CR 823, 843, 857); however, the employment agreement does not mention continuing education or on-the-job training. (CR 183-84). The employment agreement only refers to training to "become board eligible," to "become registered as an REPT," and to "become registered as a CNIM," there no mention of any continuing education or training after "eligibility" or "registration." (CR 183-86). There are also no facts identifying or detailing what this "on-the-job-training" consisted of (CR 823, 843, 857). Therefore, regardless whether Pierce received or

---

[17] Also judicially admitted Appellant's Br. p. 51.

Appellant paid for continuing education, this was not part of an otherwise enforceable agreement ancillary to the Covenant at the time it was made. Because the evidence conclusively establishes that Pierce's training was not an interest worthy of protection and further establishes that Pierce repaid the cost of that training as provided for in the employment agreement, the agreement regarding training was *not* ancillary to the Covenant.

## 2. Covenant Not Designed to Enforce Pierce's Return Promise Regarding Training

### (a). No Evidence Covenant Was Designed to Enforce Pierce's Promise Regarding Training

Appellant has no evidence showing that the Covenant was designed to enforce any Pierce's promise or consideration related to training was specifically raised. (CR 149). When challenged on this precise issue, Appellant responded:

```
The noncompete may have been designed, at least in
part, to make Pierce live up to his agreement to repay
Appellant for training expenses if he left employment
with Appellant within 5 years.
```

(emphasis added) (CR 838).

Appellant provides no evidentiary citation to support its assertion of a possible nexus and fails to even unambiguously claim such a nexus exits. Appellant instead argues that other proprietary information existed to support the Covenant (discussed below). Because Appellant failed to come forward with evidence that the Covenant was designed to enforce Pierce's consideration regarding training, Appellant failed to establish the agreement regarding training was ancillary to the Covenant.

28

### (b). Covenant NOT Designed to
### Enforce Pierce's Promise Regarding Training

In actuality, the evidence conclusively established the Covenant was *not* designed to enforce Pierce's consideration regarding training. Appellant agreed to provide for Pierce's training in exchange for either: (*i*) Pierce's promise to work for a stated period of time; or (*ii*) payment of $5,000, with interest. (CR 183-86).

Other than repayment under the stated terms, Pierce made no other promise in the employment agreement related to training. By way of example, there is no prohibition on Pierce's use or disclosure of whatever knowledge, education, or techniques he learned through training. (CR 179-80).

Moreover, the level of detail in the repayment obligation establishes that Pierce's five-year Covenant was not intended as an enforcement mechanism to insure repayment. For example, repayment is: (*i*) immediately due and payable "***in cash upon the date of termination***" of Pierce's employment; (*ii*) the unpaid debt accrues eight percent (8%) interest; (*iii*) Appellant is entitled to an award of attorney's fees and costs to collect any unpaid debt; (*iv*) applied in specific order. (CR 184-85). While terms expressly cover how the repayment obligation would be enforced, there is no mention of the Covenant. The Covenant simply was not designed to enforce either Pierce's promise to "work off" or repay the cost of his training. Accordingly, the evidence conclusively establishes that Covenant was not intended to enforce Pierce's promise of repayment. Therefore, the agreement regarding training was *not* ancillary to the Covenant.

### 3. **Appellant's Customer Information Not an Interest Worthy of Protection**

As noted previously, Appellant argued that proprietary information, other than training, supported the Covenant. When asked to identify the confidential information provided to Pierce in any detail, Appellant simply refused to answer most questions (CR 272-77, 246-47, 311, 368-69) and would only *generically* state that its customer list, surgeon preferences, and pricing structure were proprietary. (CR 241, 263, 272, 275-77).[18]

### (a). No Evidence that Customer Information Was Worthy of Protection or Reasonably Related to One

With regard to all allegedly confidential customer information, there was *no evidence* that: (*i*) such information is *Appellant's* trade secret; (*ii*) such information is entitled to protection (in other words an interest worthy of protection); (*iii*) such information was disclosed to Pierce by Appellant, as opposed to by the hospital or surgeon; or (*iv*) that Pierce took any such information with him, other than by way of his general knowledge and skill. (CR 151).

In its summary judgment response, Appellant provided nothing demonstrating that surgeon preferences was its confidential information, that it had provided Pierce with this information, or that the information was an interest worthy of protection. (CR 835-37). In fact, Appellant's summary judgment response failed to mention surgeon preferences. Thus, Appellant failed to produce a scintilla of evidence that surgeon preferences was an interest it was entitled to protect or one even worthy of protection.

---

[18] Appellant suggests that Pierce *may* have some of its business forms, but admitted these forms were neither confidential nor secret and were created from reference books. (CR 264-65).

As to pricing, Appellant's response indicates that "methods of pricing" are mentioned in the employment agreement (CR 835, 840) and Boldery's affidavit states Appellant's pricing was confidential (CR 857); however, Appellant falls short of any *competent* evidence showing that any pricing information given to Pierce was confidential or worthy of protection by a noncompete covenant. There are no facts, showing "what" precisely is confidential or "how" or "why" any pricing information in this case should be protected by a covenant not to compete. (CR 857-59). Appellant's conclusory statement and subjective beliefs are not evidence. *In re Cauley*, 437 S.W.3d 650, 657 (Tex. App.—Tyler 2014, orig. proceeding); *Courtney v. Nibco, Inc.,* 152 S.W.3d 640, 644 (Tex. App.—Tyler 2004, no pet.). Thus, Appellant failed to produce a scintilla of evidence that its pricing was an interest worthy of protection.

Appellant also argues that its customer list/identities are worthy of protection because customer information has been recognized by courts as protectable. Appellant relies on a bevy of cases where a temporary injunction issued to protect customer lists/identities/information; however, issuance of a temporary injunction does not mean the information was, in fact, a trade secret. *See, e.g., IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W .3d 191, 197 (Tex. App. — Fort Worth 2005, no pet.).

Appellant's argument presupposes anything falling within the category of customer information is worthy of protection. (CR 840). The mere fact that courts have issued temporary injunctions to protect information falling within the *category* of customer information does not relieve Appellant from establishing that its customer information is confidential and worthy of protection *in this particular case*. Protection

does not automatically attach to such things as a customer list. *Numed v. McNutt*, 724 S.W.2d 432, 435 (Tex. Civ. App.—Fort Worth 1987, no writ); *Allan J. Richardson & Assocs., Inc. v. Andrews*, 718 S.W.2d 833, 837 (Tex. App.—Houston [14th Dist.] 1986, no writ). Appellant does nothing more than make conclusory statements as to status of its customer information. There is no evidence of exactly "what" is confidential/protectable, much less "how" or "why" any information in this case is protectable. (CR 857-59).

To rise to a level of an interest worthy of protection, the information must be more than merely of a kind and character encompassed by the definition. It must be information that is not publicly available or readily ascertainable by independent investigation. *Numed*, 724 S.W.2d at 435; *Allan J. Richardson & Assocs.,* 718 S.W.2d at 837. A customer list must have a substantial element of secrecy for protection. *Numed*, 724 S.W.2d at 435; *Am. Precision Vibrator Co. v. Nat'l Air Vibrator Co.*, 764 S.W.2d 274, 276 (Tex. App.—Houston [1st Dist.] 1988) *as modified,* 771 S.W.2d 562 (Tex. App.—Houston [1st Dist.] 1989, no writ).

Appellant failed to come forward with evidence that any of its customer information (lists, identities, or anything else) was worthy of protection. In fact, it refused to do so. When Appellant's founder, sole owner, and corporate representative, was asked about the alleged confidentiality of customer information, Ms. Boldery would not disclose "what" exactly was confidential or "why" such information was confidential.

```
Q.    Is there anything confidential about the identity of
      the hospitals or surgical facilities that I might want
      to contact in order to market my new business?
      Certainly you're not claiming that, are you?
A.    I believe that there is.
```

32

**Q.** So, you think there's something confidential about the fact that there are surgeries that occur at Harris Hospital, Cook's Hospital, Baylor All Saints, HEB, Huguley?

**A.** Yes.


**Q.** Okay. What about the physicians that might perform, say a neurosurgeon? Is there anything confidential about the identity of the physicians that are neurosurgeons at certain hospitals?

**A.** Yes.

**Q.** (By Mr. McLean) What?

**A.** It's confidential.


. . . .

**Q.** So are you claiming that the identity of the physicians that might use IOM at USMD Fort Worth is confidential?

**A.** No.

**Q.** Okay. And are you claiming that the contact information for how to contact their offices is confidential?

**A.** No.

**Q.** Because that's published too. So, what is it other than physician preferences -- I'm not - I understand you've said that, like if they like hams for Christmas, but what is it about identifying a list of potential physician customers that is confidential to Neurodiagnostics?

**A.** It's confidential.

**Q.** What is?

**A.** The information is confidential.

**Q.** So you're not even going to tell me what it is?

**A.** (Witness shakes head.)

**Q.** All right.

**A.** No.

(CR 272-77, 246-47).

Appellant's assertion that its information falls within a recognized category of potentially protectable information coupled with its bare conclusions that its customer information is confidential, thus implicitly suggesting worthy of protection, is insufficient to overcome a no-evidence challenge. *Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994) (conclusory statements unsupported by facts are insufficient to raise a fact issue to prevent the granting of summary judgment); *In re Cauley*, 437 S.W.3d at, 657 (same).

Because Appellant failed to come forward with evidence demonstrating "what" and "why" surgeon preferences, its customer list/identities, or other customer information were an interest worthy of protection in this case, Appellant failed to raise a genuine issue of fact that whatever customer information Pierce might have received was an interest worthy of protection by a noncompete. Therefore, Appellant failed to meet its burden to establish the Covenant complied with the "ancillary" requirements for an enforceable covenant.

### (b). Customer Identities NOT Worthy of Protection

To the extent Appellant alleges there was some undisclosed "confidentiality" regarding client identities or other customer information, this was conclusively disproven by the facts. First, Appellant repeatedly filed pleadings identifying the hospitals where Pierce worked and the surgeons with whom Pierce worked. (CR 860-61, 497-98). Once filed, the information is public record and prevents the identity of these hospitals and

34

surgeons from being an interest worthy of protection.  *See Star-Telegram, Inc. v. Walker*, 834 S.W.2d 54, 57 (Tex. 1992) (filing documents destroys confidentiality/secrecy).

Second, as to the surgeons, Appellant does not have a contract with any surgeon (CR 231-34) and Appellant does not even consider the surgeon to be its client (CR 231-34).  The identity and contact information of non-clients cannot be an interest worthy of protection.

Finally, the identity of the surgeons and the hospitals where they practice is publicly available and readily ascertainable.[19]  Appellant admits surgeon and hospital identities are not confidential and available on the doctor's and hospital's websites. (CR 272-77, 246-47).  It is axiomatic that the hospitals know whether they have contracted with Appellant.  Likewise, the hospital knows the surgeons to whom the hospital has assigned Appellant as the IOM provider. (CR 235-37).  If Appellant's IOM technician is present in surgery, the fact Appellant contracts with that hospital is also known by the surgeon(s) and surgical staff involved in the procedure.  The identity of the hospitals and surgeons is also known to the surgical patients, as well as third-party payors who pay Appellant directly for its services (CR 266-69).

Additionally, the identity of the surgeons and hospitals was already known to Dr. Alford and others because Appellant has subcontracted its IOM services to others.  (CR 209-10).  Such information was also known to Appellant's competitors who have

_____

[19] A defendant can be liable for misappropriation for ***actually*** taking protectable information, even though that information may be readily ascertainable through legitimate means.  *See, e.g., Sharma v. Vinmar Int'l, Ltd.,* 231 S.W.3d 405, 424 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  However, there is no evidence Pierce actually took anything.

35

contracts with the same hospitals and provide monitoring for the same surgeons. (CR 241-43, 234).

Appellant has no protectable interest in this public and readily available information. Nor does Appellant have a right to prevent dissemination of the identity of the hospitals with which it contracts or the identity of surgeons with whom it is assigned to work. (CR 234,[20] 268-69,[21] 209-10[22]). Appellant came forward with nothing to show an obligation on the part of any surgeon, hospital, or third party payor to maintain the identity of these surgeons and hospitals confidential. Consequently, there is nothing preventing Synergy, a hospital, surgeon, or anyone else that knew this information from disclosing or using such information. These facts conclusively establish that identity of hospitals and surgeons were not an interest worthy of protection.

### (c). Surgeon Identities/Preferences NOT Worthy of Protection

Surgeon identities and preferences was also established as not being an interest worthy of protection. Here, it is the hospitals that assign cases to Appellant and its competitors. (CR 235). *Assuming*, as Appellant suggests, the surgeon requests that a hospital assign a specific IOM company to handle a procedure, the surgeon is merely a referral source.[23] Professional referral sources *are not* legitimate proprietary interests that may be protected by a covenant not to compete. *See Philip H. Hunke, D.D.S. v. Wilcox*, 815 S.W.2d 855, 858 (Tex. App.—Corpus Christi 1991, writ denied) (holding the

---

[20] Admitting no contracts with doctors.
[21] Admitting that it does not have contracts, or many contracts, with third-party providers.
[22] Admitting contract with Synergy ended in December 2012.
[23] Neither Pierce nor any of Appellant's IOM technicians are assigned to work with any specific doctor or hospital. (CR 363). Thus, Pierce was not the continual point of contact or even the primary contact between Appellant and any surgeon or hospital.

36

fact "flow of new patients would be diluted whenever a [competitor] is introduced into the group of local professionals" does not "form a legitimate proprietary interest which may be protected by a covenant"). Therefore, the identities and other information regarding surgeons are not interests worthy of protection.

Additionally, Dr. Alford is free to disclose to Appellant's competitors or anyone else for that matter, what he likes and dislikes a monitoring technician do to in surgery. The same is true for any other surgeon. Any surgeon can freely disclose to Synergy, Appellant, nurses, or any stranger on the street his/her preferences for monitoring and testing during a procedure. Accordingly, a surgeon's preferences are not an interest of Appellant's that is worthy of protection *via* a covenant.

### (d). Appellant's Pricing NOT an Interest Worthy of Protection

The final category of information that Appellant claims worthy of protection is its pricing information; the evidence established otherwise. Appellant admitted that its pricing has been the same for more than a decade. (CR 270-71). There is nothing secret about Appellant's pricing, especially after twelve (12) years.

Appellant's so-called confidential pricing is dictated to it by others. In many instances Appellant's pricing was set by the hospitals or a third-party payor. (CR 209). Appellant has also been asked to reduce its rates so as to remain competitive with other IOM providers. (CR 241-43, 238). There is no magic in Appellant's pricing when that pricing is dictated to it by others.

Appellant has also publicly disclosed the amount it receives ($150) by filing invoices with the trial court. (CR 209-10). This public disclosure prevents the

37

information from being an interest worthy of protection. *See Star-Telegram,* 834 S.W.2d at 57.

Appellant's pricing is also contained in its contracts with the hospitals (CR 234), is contained in invoices Appellant sends out (CR 195-99), and is known to the hospitals and third-party payors who set the prices and pay the invoices. (CR 266-67). Dr. Alford's former monitoring company, was also aware of Appellant's pricing. (CR 209-10). Appellant cannot establish that any hospital, third-party payor, Dr. Alford, or anyone else has an obligation to maintain Appellant's pricing confidential.

The Fort Worth Court of Appeals has addressed the protectability of information when it is available to a much lesser degree than Appellant's pricing information. In *Numed* the court held:

> *Here, the facts do not justify conferring the status of trade secret on the data Numed claims requires protection. The evidence reflects much of the information Numed wishes to protect is not secret. Instead, it is contained in the contracts distributed to Numed's customers, which in turn may be discovered by anyone.*

*Numed,* 724 S.W.2d at 435.

Here, Appellant's pricing has been repeatedly disclosed for twelve (12) years, without restriction, and can be readily obtained from any number of sources. Accordingly, Appellant's pricing information is unworthy of protection. *Numed*, 724 S.W.2d at 435. Because Appellant's pricing information is not worthy of protection, it cannot have a valid enforceable covenant not to compete based thereon.

**(e). Appellant Not Relieved From Establishing Ancillary Requirements**

Appellant argues that it was relieved from the burden of establishing the "specific details of the confidential and proprietary information" because it had "sought and received protection from the [trial court] regarding these details."[24] *Assuming* this to be correct, Appellant was not faced with a discovery request, it was faced with a no-evidence summary judgment.

A no-evidence motion for summary judgment <u>must be granted</u> if: (*i*) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (*ii*) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. *See, e.g., Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.,* 260 S.W.3d 529, 534 (Tex. App.—Tyler 2008, pet. denied).

*Assuming* Appellant had the option of not coming forward with evidence in discovery to support its claims, it could not refuse to come forward with evidence and also maintain claims for affirmative relief. As stated by the Texas Supreme Court:

> A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action.

*National Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 461 (Tex. 1993).

*Assuming* Appellant has a right to protect the information:

> [it] cannot eat [its] cake and have it too. The defendant also has certain rights, one of which is to

---

[24] Appellant's Br. pp. 45-48.

> defend [the] lawsuit and to develop an affirmative
> defense which may well destroy the plaintiff's right
> to maintain his action.

*Tex. Dep't of Pub. Safety Officers Assn. v. Denton*, 897 S.W.2d 757, 761 (Tex. 1995).

Appellant argues it need only to show that it had information falling into *categories* of information where other courts had found those categories protectable.[25] The mere fact Appellant claims its information falls within a *category* of information is *insufficient to raise a fact issue about the right to protection information in this case*.[26]

In the face of a no-evidence summary judgment, Appellant elected not to come forward with information necessary to raise a fact issue on its claims. Because Appellant was unwilling to provide anything more than *ipse dixit* statements regarding a protectable interest, Appellant failed to meet its burden of proof under TEX. BUS. & COMM. CODE § 15.51 and required the trial court to grant Pierce judgment. *Acad. of Skills & Knowledge,* 260 S.W.3d at 534.

### F. COVENANT'S RESTRAINTS ARE UNREASONABLE
### (APPELLANT ISSUE #4C)

Assuming (*arguendo*) some protectable interest is found to exist, the Covenant is, nonetheless, unenforceable because it is broader than necessary to protect Appellant's interests. Pierce's Covenant is unenforceable because it contains unreasonable restraints. A covenant is enforceable only to the extent that it contains restraints as to time, geographic area, and scope, which are no greater than necessary to protect good will or other business interests of the employer. TEX. BUS. & COMM. CODE § 15.50; *Gallagher*

---

[25] Appellant's Br. pp. 45-48.
[26] See Section III(C)(3)(a), *supra*.

40

*Healthcare Ins. Services v. Vogelsang,* 312 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

Restraints are unreasonable if they are broader than necessary to protect the legitimate interests of the employer. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681-82 (Tex. 1990); *Stroman*, 923 S.W.2d at 84-85. Appellant bears the burden to establish the reasonableness of each restraint. Tex. Bus. & Comm. Code Ann. § 15.51(b).

## 1. No Evidence that 5 Year Covenant Was Reasonable

Pierce challenged the lack of evidence establishing that a five year restraint was a reasonable in this case. (CR 162). Appellant could not articulate any basis for a 5-year restraint. (CR 355-59).

Appellant cites *Stone v. Griffin Communications & Sec. Sys., Inc.*, 53 S.W.3d 687, 696, no pet.), *overruled on other grounds by Am. Fracmaster, Ltd. v. Richardson*, 71 S.W.3d 381 (Tex. App.—Tyler 2001, pet. granted, judgment vacated w.r.m.), for the proposition that a 5-year restraint is *per se* reasonable. Appellant misreads *Stone*. *Stone* recognizes that a 5-year restraint is not *per se* unreasonable, it does not hold that a 5-year restraint is *per se* reasonable. *Stone* went on to hold that a 5-year restraint reasonable because the evidence ***in that particular case*** established that it would take 5 years for the protectable information to become outdated.[27]

---

[27] Appellant's Br. p. 49.

41

Unlike *Stone*, Appellant offers no evidence that whatever information Pierce allegedly received will not become outdated for at least five (5) years. Here, there is no evidence that any protectable information (*assuming it exists*) will not be outdated at the end of the month or that it is not already outdated. Thus, Appellant's reliance on *Stone* is misplaced.

### (a). Advancement of Funds Does NOT Make 5 Years Reasonable

Appellant argues its advancement of $5,000.00 for Pierce's training makes the 5-year restraint reasonable.[28] Because, the training is not an interest worthy of protection,[29] it is self-evident that a 5-year restraint is broader than necessary to protect that training.

Appellant's assertion is also devoid of authority and provides no logical nexus between the training/funds and the 5-year restraint. Appellant could have summarily stated any duration was reasonable, just as it has done with stating 5 years is reasonable. There is simply no nexus between the advance or its amount and the imposition of a 5-year noncompete.

The repayment arrangement and workout period establish that a 5-year covenant is unreasonable. If Pierce did not repay the loan *via* the workout, he was obligated to *immediately* reimburse Appellant $5,000.00, with interest. (CR 183-86). In other words, if Pierce quit 90 days after becoming board certified he would have had to *immediately* repay Appellant the entire sum. The Covenant was in no way tied to his promise to repay the advancement of training costs. For example, if Pierce had to repay the advancement

---

[28] Appellant's Br. p. 51.
[29] Section III(E)(1)-(2), *supra*.

the Covenant is not tied to his final payment. With regard to the workout period, it was 48 months, not 60 months. Moreover, the mere fact Pierce elected to "work off" the debt in *lieu* of a cash repayment does not justify an additional five (5) year prohibition after the debt has been satisfied.

### (b). Long Employment Does NOT Equal Long Covenant

Finally, Appellant argues Pierce was employed for more than 5 years and received "on the job training" and continuing education during his entire employment. (CR 823, 843, 857). Essentially, Appellant's argument is that because Pierce remained employed for a long time, he should be restricted for a long time. The term of the employment was limited to just 90 days. (CR 176). Otherwise, it was just at-will employment. Appellant offers no authority for its *tit-for-tat* argument and provides no evidence that 5 years is a reasonable restraint based on the duration of Pierce's employment.

With regard to Appellant's claim of ongoing training, neither the "on-the-job-training" nor the continuing education is mentioned in the employment agreement. (CR 183-84). And, there are no facts identifying or detailing what this ongoing training consisted of. (CR 823, 843, 857). Even if this training occurred at the tail end of Pierce's employment, this supposed ongoing training could have been publicly available or the information out-of-date within a week. There is simply no evidence that whatever the ongoing training Pierce *might* have received makes a 5-year restraint reasonable. Therefore, accepting (*arguendo*) Appellant's claim that ongoing training occurred, this does not raise a fact issue whether a 5-year restraint is reasonable. Because Appellant failed to present any evidence of that a 5-year restraint is reasonable, Pierce is entitled to

judgment that the duration of the covenant is unreasonable and, therefore, unenforceable.

*Patel v. City of Everman*, 179 S.W.3d 1, 17 (Tex. App.—Tyler 2004, pet. denied).

## 2. **Geographic Restraints Were Unreasonable**

Separate from the 5-year restraint, the geographic restrictions are patently unreasonable. (CR 181-82).[30]  A covenant not to compete is unenforceable when the restraint includes areas that the employee did not work for the former employer.  *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 387 (Tex. 1991) (holding "the restrictive covenant must bear some relation to the activities of the employee. It must not restrain his activities into a territory into which his former work has not taken him . . . .");

---

[30] Appellant suggests that a no-solicitation provision in the employment agreement is enforceable and provides an alternative to the 11-county covenant.  The no-solicitation provision is equally flawed. Without question, the no-solicitation provision is subject to the Act.  *Marsh United States, Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011).  As a consequence, the absence of an otherwise enforceable agreement to which the no-solicitation clause is ancillary is fatal to the enforcement of the no-solicitation provision.

The no-solicitation provision applies to only current and future customers.  Appellant admits surgeons are not its customers.  Moreover, whatever the relationship between Dr. Alford and his group and Appellant, the evidence establishes that was a prior relationship, not a current or future one.

Additionally, the no-solicitation provision contains no time period whatsoever. (CR 182).  It is an absolute bar to any contact with customers, regardless of activity. (CR 182).  And, it applies to all of Appellant's customers, not just the ones with whom Pierce worked. (CR 182).  Each of these failings makes the no-solicitation provision unenforceable. *Dale v. Hoschar*, 2014 Tex. App. LEXIS 8816, *4 (Tex. App.—Dallas 2014, no pet.) (covenant with an indefinite duration is unenforceable as a matter of law); *Haass*, 818 S.W.2d at 387-88 (activities have to be ones in which promisor engaged and cannot "prohibit[] an employee from working with clients that did not exist at the time employee left or with whom employee had no contact.").

There is also a diversion of business provision, which applies to all "existing and future business."  In addition to a lack of an ancillary agreement, it is not limited to business with which Pierce was involved (*Haass*, 818 S.W.2d at 387-88) and is too indefinite to be enforced based on restrictive language of "existing or future business." *See, e.g., Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 951-52 (1960) (geographic scope described as "any area where Weatherford Oil Tool Company, Inc., may be operating or carrying on business" undeterminable and subject to change; therefore unenforceable); *Gomez v. Zamora*, 814 S.W.2d 114, 118 (Tex. App.—Corpus Christi 1991, no writ) (holding restrictive language of "existing marketing area" and a "future marketing area of the employer begun during employment" to indefinite to be enforced); *Hoschar*, 2014 Tex. App. LEXIS 8816, at *7.

*Cobb v. Caye Publ. Grp., Inc.,* 322 S.W.3d 780, 784-86 (Tex. App.—Fort Worth 2010, no pet.) (holding reformation limited to areas where former employee actually worked); *Evan's World Travel,* 978 S.W.2d at 232-33 (holding noncompete enforceable only as to the one county that employee had worked in for former employer); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 792 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (reforming covenant to only counties in which the employee had conducted his duties); *Zep Mfg.*, 824 S.W.2d at 660-61 (holding a covenant unenforceable because it prohibited an employee from working anywhere, regardless of whether he had serviced the area during his employment); *Webb v. Hartman Newspapers, Inc*., 793 S.W.2d 302, 303 (Tex. App.—Houston [14th Dist.] 1990, no writ) (restricting geographical area of a noncompete covenant between a newspaper publisher and former employee to the distribution area of the newspaper for which the employee had worked).

The Covenant restrains Pierce from engaging in activities in eleven counties; however, Appellant did not perform any services in at least one of those counties (CR 259) and Pierce never worked for Appellant in five of those counties. (CR 764-65). Appellant's document shows that Pierce actually did not work in six of the eleven counties. (CR 860). The Covenant's geographic restraints are, therefore, unreasonable as matter of law. *Haass*, 818 S.W.2d at 387; *Evan's World Travel,* 978 S.W.2d at 232-33; *Butler,* 51 S.W.3d at 792; *Zep Mfg.*, 824 S.W.2d at 660-61; *Webb.* 793 S.W.2d at 303.

Appellant makes the bare assertion that the "geographic restriction at issue here is limited to the territory in which the employee worked while in the employment of NeuroTex."[31] Appellant *cites no evidence to support this assertion because none exists*.

Appellant next asserts that the geographic restraints are reasonable because "[i]n 2005, when the Employment Agreement was entered into by the parties, Appellant had either worked in or had prospective business in the counties included within the covenant not to compete." (CR 845)[32] Appellant's argument misses the mark.

Whether Appellant had or might have intended to do business in a geographical locale is not the test for determining the reasonableness of Pierce's Covenant.[33] *Cobb,* 322 S.W.3d at 784-86; *Haass*, 818 S.W.2d at 387; *Butler,* 51 S.W.3d at 792; *Evan's World Travel,* 978 S.W.2d at 232-33; *Stroman*, 923 S.W.2d at 85; *Zep Mfg.*, 824 S.W.2d at 660-61; *Webb.* 793 S.W.2d at 303. The reasonableness of the restraints is not measured by where Appellant performed services, but where Pierce provided services for Appellant. *Haass*, 818 S.W.2d at 387; *Butler,* 51 S.W.3d at 792; *Evan's World Travel,* 978 S.W.2d at 232-33; *Stroman*, 923 S.W.2d at 85; *Zep Mfg.*, 824 S.W.2d at 660-61; *Webb.* 793 S.W.2d at 303. Because the 11-county restraint was conclusively established to be unreasonable, it is unenforceable. *Patel*, 179 S.W.3d at 17.

---

[31] Appellant's Br. p. 54.
[32] Appellant's Br. p. 54.
[33] There is nothing establishing that Appellant's historical or *prospective* service areas were known to or discussed with Pierce at the time the Covenant was signed.

### 3. Scope of Activities from Which Pierce is Prohibited is Unreasonable

The Covenant is also unenforceable because it unreasonably restrains Pierce's future activities. A restrictive covenant must bear some relation to the activities of the employee at his former employer and must not restrain his activities in a field into which his former work has not taken him. *See, e.g., Haass*, 818 S.W.2d at 387.

The Covenant reads: "*Employee shall not, directly or indirectly, become <u>engaged in any business or activity</u> …, which directly or indirectly competes with the Company's business owned or operated by Company or any of Company's subsidiaries, partners, associates, or affiliates . . . .*" (emphasis added) (CR 182). On its face, the Covenant prohibits Pierce from working as a janitor or in any other capacity for anyone that Appellant might presently or in the future consider to be its competitor.

The true breadth of this restraint is not even presently determinable. According to Appellant, Pierce might or might not be prohibited from activities depending on what Appellant decides to do in in the **future**.

> **Q.** But you did testify that the noncompete would restrict him as written from performing clinical testing services performed outside the operating room, correct?
> **A.** Well, it just encompass company business. There was a time when clinical testing was a big part of the business.
> **Q.** So is that a yes?
> **A.** I'm not certain. How's that? I'm not certain, because the nature of the business changes from time to time. There could be a time in the future where clinical testing is a big part of the business.

(CR 1001).

As written, the restraint is overly broad because it is based on Appellant's changing business, not Pierce's limited duties provided to Appellant. (CR 173-74). *See, e.g., Weatherford Oil,* 340 S.W.2d at 951-52 (restraint described as "any area where Weatherford Oil Tool Company, Inc., may be operating or carrying on business" undeterminable and subject to change; therefore unenforceable). Such restrictions are effectively industry-wide exclusions from the enumerated counties. *Id; Stroman*, 923 S.W.2d at 85; *see Haass*, 818 S.W.2d at 387; *U.S. Risk Ins. Group, Inc. v. Woods*, 399 S.W.3d 295, 301 (Tex. App.—Dallas 2013, no pet.).

In addition, the restraints apply to hospitals and surgeons with whom Appellant has no contract or never had contact (CR 256-58). According to Appellant:

```
I believe that any competition is in violation of the
contract because there's always the potential for
[NeuroTex] to obtain a physician that either is not
utilizing the monitoring and might and a hospital that
has a company that can't make it, won't make it, isn't
there yet.  There always the potential, always.
```

(CR 256; *see also* 257-58).

However, Appellant cannot provide services to a hospital without a contract and privileges at that hospital. (CR 233). Further, ***Appellant admits that performance of IOM for a surgeon with whom Appellant has not previously worked is neither directly nor indirectly competitive with it***. (CR 220-21). Moreover, whatever the relationship between Dr. Alford and his group and Appellant, the evidence establishes that it was not a current relationship, but a former relationship. Despite the absence of a competitive threat and despite Appellant's inability to even service certain facilities, the Covenant

48

prohibits and Appellant seeks to forbid Pierce from providing any services in his field to surgeons, with whom Appellant has no relationship, and to hospitals that Appellant cannot service.

Without question, the Covenant, as written, forbids activities that are unreasonable and greater than necessary to protect any interest that Appellant might have. *DeSantis*, 793 S.W.2d at 681-82; *Stroman*, 923 S.W.2d at 84-85. Synergy is, therefore, entitled to judgment that the is unenforceable. *Patel*, 179 S.W.3d at 17.

## 4. Pierce Did Not Breach Covenant

Appellant erroneously claims that there is no dispute that Pierce breached the Covenant.[34] As set forth herein, the Covenant is invalid and unenforceable; therefore, it could not be breached. Further, Pierce primarily worked at Victory Medical Center in Plano, a hospital that he never worked in while an employee of Appellant (CR 934, 958, 964) with surgeons with whom he had not previously worked. (CR 173). This is not competitive with Appellant by its own admission. (CR 220-21).

As a Synergy employee, Pierce worked at USMD hospital on a few occasions, where Dr. Tinley was the surgeon (CR 957, 961-62). Pierce had not previously worked with Dr. Tinley (CR 497-98, 961-62). Moreover, Appellant confesses that there is no breach related to working at USMD because there was no damage.

> Q.    Well, we know based on the Reptrax report that you produced that Josh performed IOM monitoring services for Dr. Tinley at USWD Fort Worth. Those are the ones reflected on that Reptrax report.
> A.    um-humm, correct.

---

[34] Appellant's Br. p. 57.

```
Q.    Are you claiming that those are procedures that
Neurodiagnostics lost?
A.    No.
```

(CR 373).  Appellant's contention of an undisputed breach is incorrect.

### G.  APPELLANT FAILED TO PROVE DAMAGES
### (APPELLANT ISSUE #4D)

### 1. Damages Foreclosed by Statute

Damages are a necessary element of Appellant's breach of contract claim. *See Acad. of Skills & Knowledge,* 260 S.W.3d at 536 (listing of elements for breach). Assuming (*arguendo*) that the Covenant was otherwise valid, Appellant judicially admitted (CR 756-62; 167-68) that Pierce never worked for Appellant in five of the eleven of the counties covered by Pierce's Covenant.[35] (CR 764-65).  Appellant also admitted that it had never provided services in at least one of the counties in which Pierce was prohibiting from working.  (CR 259).  Therefore, even if the Covenant were otherwise enforceable, it would have to be reformed. *Haass*, 818 S.W.2d at 387; *Evan's World Travel,* 978 S.W.2d at 232-33; *Butler,* 51 S.W.3d at 792; *Zep Mfg.*, 824 S.W.2d at 660-61; *Webb*, 793 S.W.2d at 303.

Reformation precludes damages and forecloses Appellant's breach of contract claim.  TEX. BUS. COMM. CODE § 15.51(c); *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,* 793 S.W.2d 660, 663 (Tex. 1990), *superseded on other grounds by statute as stated in Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) *reh'g denied* (Feb. 14, 2014); *Zep Mfg.,* 824 S.W.2d at 661, 663-64.

---

[35] This is not to say that a county-wide restriction is reasonable (assuming a protectable interest exists), because IOM is a hospital-based practice that occurs within a surgical center.

In its brief to this Court, Appellant does not challenge the foreclosure-of-damages ground. Nor did it assign a general point of error as provided for in *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 120 (Tex. 1970).

Appellant makes the bare assertion that the "geographic restriction at issue here is limited to the territory in which the employee worked while in the employment of NeuroTex."[36] Appellant *cites no evidence to support this assertion because none exists*. It also contends the geographic restrictions were reasonable because at the time the Covenant was signed Appellant "either worked in or had prospective business in the counties included within the [Covenant]."[37] Appellant's *intent* to work does not address Synergy's challenge or the law supporting that challenge — Pierce never worked in five of the eleven counties or that Appellant had never provided services in one of those counties. Moreover, whether Appellant had or might have intended to do business in a geographical locale is not the test for determining the enforceability of Pierce's Covenant. *Cobb,* 322 S.W.3d at 784-86; *see also Haass*, 818 S.W.2d at 387; *Evan's World Travel,* 978 S.W.2d at 232-33; *Butler,* 51 S.W.3d at 792; *Zep Mfg.*, 824 S.W.2d at 660-61; *Webb*, 793 S.W.2d at 303.

### 2. No Evidence of Damages

Appellant also argues that it provided the trial court with evidence of damages because it had historical, annual revenues of approximately $400,000 from procedures

---

[36] Appellant's Br. p. 54.
[37] Appellant's Br. p. 54.

where Alford and his group were the surgeons.[38]  This is merely an assertion of revenues, not evidence of recoverable damages (*i.e.*, lost profits).  *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 n.1 (Tex. 1992); *Atlas Copco Tools v. Air Power Tool & Hoist*, 131 S.W.3d 203, 209 (Tex. App.—Fort Worth 2004, pet. denied).  Appellant admits it does not know how much of that supposed revenue is profit. (CR 336-37).

Recoverable lost profits are net profits, not gross profits. *See, e.g., Atlas Copco Tools,* 131 S.W.3d at 209. Net profits are "what remains in the conduct of business after deducting from its total receipts all of the expenses incurred in carrying on the business." *Id.*  Evidence of lost revenue lacks probative value and constitutes no evidence of lost profits. *Id.*  Thus, Appellant's supposed historical revenues is not evidence of recoverable damages.

Appellant also admits that it did not collect $400,000 in annual revenues from Alford or his group in 2013 or 2012. (CR 337).  In fact, Appellant could not state whether it had collected that much in 2011. (CR 337).  In other words, going back 3 years before Pierce left Appellant's employ, Appellant cannot provide evidence of its $400,000 revenue allegation.

Moreover, Appellant's historical revenue argument does not address the damage-foreclosure ground.  Instead, Appellant argues that because it had a claim for injunctive relief; therefore, its cause of action should survive irrespective of damages.[39]  In addition

---

[38] Appellant's Br. pp. 10, 59-60; *see also* (CR 825, 852, 858).
[39] Appellant's Br. p. 60.

to being invalid, Appellant's injunction argument fails because Appellant failed to establish any alternative, reasonable restraints.[40]

## H. TRIAL COURT NOT REQUIRED TO REFORM COVENANT (APPELLANT ISSUE #4E)

Appellant next complains that the trial court did not reform the Covenant. Appellant did not affirmatively seek reformation. Neither Appellant's first amended petition nor its second amended petition requested reformation. (CR 48-58, 455-66).

Appellant consistently maintained throughout the litigation that the Covenant was enforceable as written. As an alternative allegation in its summary judgment response, Appellant raised for the first time that reformation of the geographic scope to Pierce's actual counties of employment was acceptable. (CR 846). This is insufficient and is a waiver of any right to reformation. *Sentinel Integrity Solutions, Inc. v. Mistras Grp., Inc.,* 414 S.W.3d 911, 921 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see Emergicare Sys. Corp. v. Bourdon,* 942 S.W.2d 201, 204 (Tex. App.—Eastland 1997, no pet); *Daytona Grp.,* 800 S.W.2d at 290.

*Assuming* a request for reformation is implied, the trial court did not err in failing to reform the Covenant. First, reformation is only proper where the covenant is necessary to protect a legitimate business interest. *Daytona Grp.,* 800 S.W.2d at 290. Because the Covenant was not necessary to protect any legitimate business interest of Appellant,[41] the Covenant could not be reformed. *See id.*

---

[40] *See* Section III(H), *infra*.
[41] See Section III(E), *supra*.

Second, when, as here, a covenant involves the promisor's rendition of personal services, the burden is on Appellant to establish that the covenant meets the requirements of the Act. *See* TEX. BUS. & COMM. CODE ANN. § 15.51(b); *see also Stroman*, 923 S.W.2d at 85. Appellant also has the burden to establish what, if any, reformation of the Covenant would be reasonable and necessary to protect its legitimate business interest(s). *See DeSantis*, 793 S.W.2d at 685; *Stroman*, 923 S.W.2d at 85. Unless such a showing is made, the covenant cannot be reformed. *DeSantis*, 793 S.W.2d at 685; *Stroman*, 923 S.W.2d at 85; *Daytona Grp.*, 800 S.W.2d at 290. Appellant failed to make such a showing.

Appellant offered no alternative duration to the 5-year restraint and provided no evidence as to the reasonableness of any alternative duration. Appellant also offered no alternative and no evidence to establish any lesser degree of activity that reasonably should be restrained.

Appellant's conditional and reluctant acceptance to have the trial court enforce the Covenant in only those counties where Pierce worked during his employment falls far short of establishing that a county-wide restraint is reasonable. An insurmountable gap exists between the evidence in the record and the evidence that a county-wide restraint is reasonable. For example, the evidence establishes that: (*i*) Pierce's duties were limited to that of an IOM technician and IOM only occurs in a surgical facility (CR 172); (*ii*) the hospital, not the surgeon, is Appellant's client (CR 231-37); and (*iii*) Appellant cannot work in a surgical facility without contracting with that surgical facility. (CR 231-34).

Other than a desire to eliminate any possible competition,[42] Appellant offered nothing to explain why Pierce's former work, which only occurs within the 4 walls of a surgical facility, justified a county-wide restraint. Appellant's admission that Pierce could work in Tarrant and Dallas counties under the right set of circumstances (CR 1603) further erodes any foundation for a county-wide restraint.

As another example of this insurmountable gap, Appellant filed a list of hospitals and surgeons that Pierce worked with over the tenure of his of employment (CR 860) but nothing indicates the frequency or time period that he worked with any physician or in any facility. In contrast, the evidence shows that Pierce worked at some hospitals only once during his employment with Appellant. (CR 921). Appellant fails to identify anything showing what Pierce learned or could have learned during a single procedure or even a few procedures that would allow the trial court to determine a reasonable duration or geographic restraint for reforming the Covenant.

As to the time periods involved, the record only allows for speculation wholly insufficient to reform the Covenant. If the last time Pierce worked in a listed facility or with a listed physician was 2006, there is no evidence showing the necessity of restraining Pierce from working with that surgeon or in that facility *beginning* in 2013, when he left Appellant's employ, or for five years thereafter.[43] Here, for example, Pierce had worked in USMD hospital in Fort Worth while an employee of Appellant, but had not worked in that hospital for possibly up to five years before leaving Appellant's

---

[42] (CR 256; *see also* 257-58).

[43] The same could be said for the most of the years thereafter.

employ. (CR 965). Given the fact the record is devoid of the time periods during which Pierce worked at the enumerated facility and surgeons (CR 860), Appellant failed to provide sufficient evidence of alternative, reasonable duration or geographic restraints. Therefore, the trial court did not err by failing to reform the Covenant.

## I. NO EVIDENCE OF FIDUCIARY BREACH
### (APPELLANT ISSUE #5)

In its final challenge to Pierce's motion, Appellant argues that Pierce failed to sufficiently raise a no-evidence challenge to Appellant's fiduciary duty claim. To be clear, Appellant does not argue that it presented a scintilla of evidence as to the challenged element, only that Pierce's motion was deficient.

The elements of a breach of fiduciary duty cause of action are: (*i*) a fiduciary relationship between the plaintiff and defendant, (*ii*) the defendant must have breached its fiduciary duty to the plaintiff, and (*iii*) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *See, e.g., Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.,* 260 S.W.3d 529, 540 (Tex. App.—Tyler 2008, pet. denied). Appellant argues Pierce's summary judgment motion is deficient because it failed to specifically challenge any element of its fiduciary duty claim. Pierce unquestionably challenged the second element of Appellant's fiduciary duty claim – breach.

Pierce's motion states in multiple places:

- "Plaintiff presents no evidence that Defendant took any proprietary or confidential information. Exhibit 1, Excerpts 10, 11, 12, 18, 22."

- "Plaintiff presents no evidence of breach of fiduciary duty while employed."

56

- "Plaintiff also brings a cause of action for breach of fiduciary duty, yet again does not bring forth any evidence of such a breach during the time of his employment (Exhibit 1). Defendant seeks summary judgment that Defendant did not breach his fiduciary duty while employed at Plaintiff."

Appellant's claim that Pierce was violating his Covenant is a contractual obligation and does not give rise to a fiduciary duty. *See Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 203 (Tex. 2002). Therefore, Appellant had to come forward with some other act constituting a breach.

As an employee, Pierce had limited fiduciary obligation to an employer. In *Johnson*, the Supreme Court stated:

> An at-will employee—even a fiduciary one—may plan to compete with his employer and take certain steps toward that goal without disclosing his plans to the employer, but he may not "appropriate his employer's trade secrets," "solicit his employer's customers while still working for his employer," "carry away certain information, such as lists of customers," "act for his future interests at the expense of his employer by using the employer's funds or employees for personal gain or by a course of conduct designed to hurt the employer," "accept a fee or other compensation for referring a matter to a [competitor] without the employer's consent."

*Id*. at 202. (citation omitted). Appellant came forward with no evidence that Pierce breached any of the duties identified in *Johnson*.[44]

To further demonstrate the lack of evidence that Pierce took any trade secrets or business information, Pierce cited the following testimony from Boldery's deposition:

---

[44] Indeed, the evidence shows Pierce did not solicit Dr. Alford's or his group's business. (CR 208, 211, 277-78, *see also* 337-38, 342, 343, 372, 373, 332-33).

**Q.** Have you done anything to determine whether or not Mr. Pierce took a single item from you, Neurodiagnostic Texas, when he left? Let me rephrase it. Do you have any knowledge that he took any contract with him?
**A.** I don't know. (CR 317)

**Q.** Do you have any information that Mr. Pierce took anything that you consider proprietary from your business?
**A.** Like I said, I'm not sure. (CR 319)

**Q.** Let me see if I can short-circuit it somewhat. Do you have any information today during this deposition of anything that you believe Mr. Pierce took from the company that you would consider either a trade secret or confidential or proprietary?
**A.** Again, I'm not sure. You know, we've requested information. We haven't -- we're going to request information and maybe, you know, maybe it will reveal something, but, you know, I don't know. (CR 320)

**Q.** Do you have a plan of any activities that you would engage in or have someone on your behalf engage in to determine whether he took anything?
**A.** I'm not sure.
**Q.** Do you have a time frame in which you might determine this before we go to trial?
**A.** I don't know. (CR 321).

Here, Pierce challenged the absence of evidence that he breached any fiduciary duty he might have owed to Appellant. Appellant failed to present any evidence that Pierce failed to comply with any fiduciary obligation that he might have owed. Accordingly, the trial court properly granted judgment on Appellant's fiduciary duty claim.

## PRAYER

Appellee Josh Pierce requests that this Court uphold the trial's judgment in all respect and that judgment in favor of Pierce be affirmed.

58

Respectfully submitted,

*/s/ Carter L. Hampton*
Carter L. Hampton
Texas State Bar No. 08872100
HAMPTON & ASSOCIATES, P.C.
1000 Houston Street, 4th Floor
Fort Worth, Texas 76102
Phone: (817) 877-4202
Fax: (817) 877-4204

**ATTORNEY FOR APPELLEE
ROBERT "JOSH" PIERECE**

## CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document (MS Word), I certify that the sections covered by T.R.A.P. 9.4(i)(1) contain 14,599 words.

*/s/ Carter L. Hampton*
Carter L. Hampton

## CERTIFICATE OF SERVICE

This is to certify that on March 6, 2015, a true and correct copy of the foregoing APPELLEE ROBERT "JOSH" PIERCE'S OPENING BRIEF was delivered to opposing counsel, listed below, in accordance with the Texas Rules of Civil Procedure.

*/s/ Carter L. Hampton*
Carter L. Hampton